UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| **WILLIAM ENGLAND and MAXINE ENGLAND,** ***on their own behalf and those persons similarly situated*** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | Civil Action No. |
| **FINANCIAL ACCOUNTS SERVICE TEAM, INC.** | ) | Jury Trial Demanded |
| **Defendant.** | ) | |

**PLAINTIFFS' COMPLAINT**

## PRELIMINARY STATEMENT

1. This is an action for damages brought by individual consumers under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter, the "FDCPA") wherein Defendant communicated with Plaintiffs in an attempt to collect a consumer debt in a manner that attempts to abuse, harass as well as unfairly deceive and mislead Plaintiffs into making payment on such alleged debt in an amount that is not authorized by law.

2. Plaintiff William England additionally brings this action individually for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter, the "FCRA").

3. Plaintiff William England brings this action on behalf of himself and a Class of similarly situated individuals.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 28 U.S.C. § 1331, and pursuant to 15 U.S.C.

§§ 1692 and 1681.

5. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District because the acts and transactions occurred in this District and Plaintiffs resided in this District when the violations began.

7. Defendant is subject to the jurisdiction of this District because Defendant regularly conducts business in this District and regularly attempts to collect debts from consumers located in this District.

## PARTIES

8. Plaintiff William England ("Mr. England") and Plaintiff Maxine England ("Ms. England") (together "Plaintiffs" of "the Englands") are each a natural person who reside in Eaton County, Michigan, and are each a "consumer" as that term is defined by 15 U.S.C. § 1692a(3)[1].

9. Mr. England is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Financial Accounts Service Team, Inc., is a for profit Tennessee Corporation doing business in the state of Tennessee (hereinafter "FAST"), and may be served through its agent for service of process as follows: Financial Accounts Service Team, Inc, 8202 Kingston Pike, Knoxville, TN 37919.

11. Defendant FAST is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12. Defendant FAST is a "person" who furnishes information to credit reporting

[1] Plaintiffs were formerly residents and citizens of the State of Tennessee residing in Knox County.

agencies such as Equifax, Experian and Trans Union as provided in the FCRA and as defined by 15 U.S.C. § 1681s-2.

## FAIR DEBT COLLECTION PRACTICES ACT GENERALLY

13. The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debts. See 15 U.S.C. §§ 1692 *et seq.*

14. Congress passed the FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . , [e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers . . . , and [m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692 (a), (b), and (c).

15. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e).

16. The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)"; see also *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

17. Reporting debts to credit reporting agencies is an attempt to collect debt. "Each reporting of the alleged debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). See *Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to

a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); See also *Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); accord *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991)."

**FAIR CREDIT REPORTING ACT GENERALLY**

18. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

19. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

20. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. 15 U.S.C. § 1681s-2(b).

21. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681n.

22. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal

to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. 15 U.S.C. § 1681o.

## DEBT AND COLLECTION IN TENNESSEE GENERALLY

23. In Tennessee, parents of minor children are liable for some of their children's debts pursuant to the common law doctrine of necessaries; such as food, clothing, shelter, and medical expenses.

24. The doctrine is comparatively similar to the common law doctrine of necessaries imposed on spouses which Tennessee has codified at Tenn. Code Ann. § 47-18-805.[2]

25. A creditor or debt collector cannot add pre-judgment interest or collection fees, or attorney fees to a debt without a signed contract allowing the same.

## FACTUAL ALLEGATIONS

26. FAST has alleged that Plaintiffs incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a debt allegedly originally owed to Black and Black Pediatrics (hereinafter "Black").

27. After alleged default, the debt was transferred and/or assigned to FAST for collection from Plaintiffs.

---

[2] Where the applicant for credit is married, the spouse of the applicant shall not be liable, other than to the extent common law liability is imposed for furnishing necessaries, for any debts, charges, or accounts where the spouse has not signed the application for credit.

28. FAST is regularly engaged in collection of consumer debts owed or due, or asserted to be owed or due another, and attempts to collect the debts by making telephone calls, and/or sending collection letters, and/or credit reporting.

29. FAST does not maintain (i.e., actually employ or implement) procedures to avoid errors under the FDCPA.

30. Any procedures maintained (i.e., actually employed or implemented) by FAST to avoid errors under the FDCPA failed to avoid using false, deceptive, misleading, or unfair communications when communicating with consumers in connection with the collection of debts.

31. The expenses incurred and the time wasted by Plaintiffs in attempting to contact Defendant and mailing the dispute letter (Exhibit 2) constitutes a concrete and particularized injury to establish standing. See, e.g., *Ebaugh v. Medicredit, Inc.*, 2025 U.S. App. LEXIS 8530, *Healy v. Milliman, Inc.*, 2022 WL 1061921 (W.D. Wash. Apr. 8, 2022), *Losch v. Nationstar Mortg*. LLC, 995 F.3d 937, 943 (11th Cir. 2021).

**FACTS SPECIFIC TO PLAINTIFFS**

32. At some point prior to April of 2024 Plaintiffs' minor child received medical services at Black.

33. Prior to the child receiving services at Black, Ms. England, in December of 2019, signed a Financial Responsibility form guaranteeing payment for her child's medical debts and agreeing to pay a monthly maintenance fee of 2% after 90 days of non-payment, and a collection fee of 40% if a collection agency was engaged. A copy of the Financial Responsibility form is attached hereto as **Exhibit 1.**

34. Upon information and belief at no time did Mr. England sign such a form with Black.

35. At some point in July of 2025 Plaintiffs received a collection letter from FAST attempting to collect the alleged original debt, a maintenance fee, and a 40% collection fee.

36. Further FAST reported a tradeline on Mr. England's Equifax credit report stating that the original amount of the debt was $684.

37. Upon information and belief, the $684 was not accurate as the Plaintiffs had paid Black in full via three checks and two credit card payments prior to July 2025.

38. Mr. England filed a dispute with Equifax who transmitted the dispute to FAST who in response verified the debt as accurate and stated a balance owing of $698 as of September 27, 2025. A copy of the Equifax dispute result is attached as **Exhibit 2.**

39. Further, on or about September 1, 2025, Mr. England filed a complaint with the Consumer Financial Protection Bureau (CFPB) stating that the debt had been paid in full to Black via three checks and two credit card payments, that there was no debt and no fees owed by him, and that FAST had failed to respond to his prior disputes. A copy of the CFPB complaint is attached hereto as **Exhibit 3.**

40. Upon information and belief, FAST did not respond to the CFPB complaint until December 8, 2025 whereby it stated that the amounts reported are accurate and that FAST does not add any fees. A copy of the December 8, 2025 response is attached hereto as **Exhibit 4.**

41. On or about October 14, 2025, FAST sent a Notice of Dispute and Verification letter addressed to Plaintiffs in connection with collection of the debt and in an attempt to collect the debt. A copy of the letter October 14, 2025 letter is attached hereto as **Exhibit 5.**

42. The collection letter conveyed information regarding the debt, including that Black was alleged to be owed the debt, and the amount alleged as owed, and is a "communication" as defined by 15 U.S.C. § 1692a(2). See Exhibit 5.

43. The letter, Exhibit 5, stated that the total amount due was $720.04, which included an original amount allegedly owing of $488.73, fees of $195.49, and interest of $35.82 and was signed “Tyler Taber”. See Exhibit 5.

44. In response to the verification to Equifax (Exhibit 2) and the October 14, 2025 letter (Exhibit 5) Mr. England, on or about October 16, 2025 contacted FAST/Mr. Taber via email and reiterated that the debt had previously been paid in full to Black by the Plaintiffs (contrary to their allegations that no payments had been made since April 2024) attaching copies of the checks previously accepted by Black, and demanding an itemized accounting showing what if anything was allegedly still owing.

45. Additionally, on or about October 17, 2025 Mr. England filed a complaint with the Office of the Tennessee Attorney General (“TAG”) again reiterated his complaints regarding validation and an attempt to collect a debt and fees that Plaintiffs did and do not owe. A copy of the TAG complaint is attached hereto as **Exhibit 6.**

46. Around October 2025 Mr. England filed a dispute with TransUnion who transmitted the dispute to FAST who in response verified the debt as accurate and stated a balance owing of $729 as of November 6, 2025. A copy of the TransUnion dispute result is attached as **Exhibit 7.**

47. On or about December 9, 2025 Mr. England retrieved his Equifax and TransUnion credit reports which showed that FAST was continuing to report the tradeline with an amount owing of $729.00. A copy of the relevant pages of the Equifax and TransUnion reports are attached hereto as collective **Exhibit 8.**

48. On or about December 22, 2025 FAST responded to the TAG complaint and among other things responded that the consumer had signed the financial agreement allowing for the

addition of interest which is disputed by Mr. England but not Ms. England. A copy of the response is attached hereto as **Exhibit 9.**

## CLASS ALLEGATIONS

49. Plaintiff Mr. England brings this action under Fed. R. Civ. P. 23 on behalf on behalf of on behalf of a class of similarly situated individuals (the "Class"), defined as follows:

> All persons (1) from whom FAST attempted to collect a debt containing interest and/or fees within the applicable statute of limitations period, (2) where the consumer did not sign an agreement or contract with the original creditor providing for the addition of interest and/or fees.

50. Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

51. Plaintiffs hereby reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

52. **Numerosity.** The members of the Class are so numerous that the joinder of all members is impractical, as the Class is estimated to consist of hundreds, if not thousands of members. A class action is the only feasible method of adjudicating the rights of all affected putative class members, and absent allowance of a certification of a class action, a failure of justice will result. The number of putative Class members can be readily ascertained by a review of the

Defendant's records. Using this information, Class members can be identified and ascertained for the purpose of providing notice and ultimate relief.

53. **Commonality and Predominance.** This action involves common questions of law and fact that predominate over any questions affecting individual Class members. These common questions are appropriate for class certification because the resolution thereof would substantially advance the disposition of this matter and each party's interests herein. These common questions include:

a. Whether the Plaintiffs are consumers as that term is defined by the FDCPA;

b. Whether the Defendant is a debt collector as that term is defined by the FDCPA;

c. Whether the accounts of the Plaintiffs and Class Members are consumer transactions as that term is defined by the FDCPA;

d. Whether Defendant attempted to collect a debt from Plaintiffs and Class members within the applicable statute of limitations period;

e. Whether the Plaintiff Mr. England and Class members entered into an agreement or contract allowing for the addition of interest and/or fees;

f. Whether Defendant attempted to collect interest and/or a fee not provided for by contract or law from Plaintiff Mr. England and Class members.

g. Whether Plaintiff Mr. England and Class members were injured and suffered damages or other losses because of Defendant's actions as described herein; and

h. Whether Plaintiff Mr. England and Class members are entitled to damages, and the measure and amount of those damages.

54. **Typicality.** Plaintiff Mr. England's claims are typical of those of other Class members. Mr. England did not enter into an agreement with an original creditor allowing for the addition of interest or fees. Defendant was contracted by the original creditor to collect the alleged outstanding debt which contained improper interest and fees. As such, Plaintiff Mr. England's claims arise from the same factual circumstances as the claims of other Class members, and their damages and injuries are akin to those of other Class members. Plaintiff Mr. England seeks relief consistent with the relief sought by the Class.

55. **Adequacy.** Plaintiffs are an adequate representative of the Class because they are each a member of the Class that they seek to represent, are committed to pursuing this matter against Defendant to obtain relief for the Class, and have no conflicts of interest with the Class. Moreover, Plaintiffs' attorneys are competent and experienced in litigating class actions such as this one. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect Class members' interests.

56. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device

presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692, *et seq.***
***On behalf of the Plaintiff Mr. England and the Class***

57. Mr. England incorporates by reference paragraphs 1-48 as though fully stated herein.

58. Mr. England and the class members are consumers under the FDCPA, the Class Accounts are debts under the FDCPA, and the Defendant is a debt collector under the FDCPA. 15 U.S.C. §§ 1692a(3), (5), (6).

59. Mr. England and Class members each allegedly owed a consumer debt as defined within the meaning of 15 U.S.C. § 1692a(5) which Defendant attempted to collect within one (1) year of the filing of this suit.

60. The foregoing acts and omissions of FAST in an attempt to collect interest and/or fees not provided by contract or law constitute numerous and multiple violations of the FDCPA including, but not limited to violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(8), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f, and/or 15 U.S.C. § 1692f(1) with respect to Mr. England and the putative Class members.

61. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of 15 U.S.C. §§ 1692 *et seq.*

62. The actions of the Defendant as described herein caused Plaintiff Mr. England and the putative Class members to suffer actual damages in the form of impact to credit, attorney's fees, costs, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

63. As a result of the Defendant's failure to comply with the provisions of the FDCPA, and the resulting injury and harm Defendant's failure caused, Plaintiff Mr. England and the Class members are entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

**COUNT II**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692, *et seq.***
***On behalf of the Plaintiffs Only***

64. Plaintiffs incorporate by reference paragraphs 1-48 as though fully stated herein.

65. The foregoing acts and omissions of FAST in an attempt to collect a debt or an amount not owing on a debt from Plaintiffs constitutes numerous and multiple violations of the FDCPA including, but not limited to violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f, and/or 15 U.S.C. § 1692f(1) with respect to Plaintiffs.

66. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of 15 U.S.C. §§ 1692 et seq.

67. The actions of the Defendant as described herein caused Plaintiffs to suffer actual damages in the form of impact to credit, attorney's fees, costs, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

68. As a result of the Defendant's failure to comply with the provisions of the FDCPA, and the resulting injury and harm Defendant's failure caused, Plaintiffs are entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## COUNT III:
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681, *et seq.*
## *On behalf of Plaintiff Mr. England only*

69. Mr. England incorporates by reference paragraphs 1-48 as though fully stated herein.

70. Based on the allegations above, Mr. England sent or logged a Notice of Dispute to Equifax which complied with 15 U.S.C. § 1681i(a)(2) in late August or early September 2025 which detailed Mr. England's specific dispute of the debt and Equifax sent to FAST.

71. Based on the allegations above and Exhibit 2 FAST verified to Equifax that the amount owed by Mr. England was correct in the original amount of $684 and that as of August 27, 2025 the amount owing was $698. See Exhibit 2.

72. At no time did Mr. England owe FAST $684.

73. At no time did Mr. England owe FAST $698.

74. Based on the allegations above, Mr. England sent or logged a Notice of Dispute to TransUnion which complied with 15 U.S.C. § 1681i(a)(2) in October 2025 which detailed Mr. England's specific dispute of the debt and TransUnion sent to FAST.

75. Based on the allegations above and Exhibit 8 FAST continued to furnish the same inaccurate information as recently as December 9, 2025 to Equifax and TransUnion reporting a tradeline that stated Mr. England now owed $729. See Exhibit 8.

76. At no time did Mr. England owe FAST $729.

77. FAST is subject to and violated the provisions of 15 U.S.C. § 16811s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff Mr. England's credit reports, failing to fully and properly re-investigate Mr. England's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and TransUnion correct the Tradeline Accounts on his credit reports and credit file after re-investigating his disputes.

78. The foregoing acts and omissions by FAST constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

79. FAST's continued incomplete and inaccurate reporting as demonstrated above, in light of its knowledge of the actual errors and omissions was willful and thus Plaintiff Mr. England is entitled to both statutory and punitive damages pursuant to 15 U.S.C. §1681.

80. As a result of each and every willful violation of the FCRA, Plaintiff Mr. England is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1), as well as costs, statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from FAST.

81. As a result of each and every negligent violation of the FCRA, Plaintiff Mr. England is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1), as well as reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from FAST.

**WHEREFORE,** Plaintiffs William England and Maxine England, individually and on behalf of the Class request that the Court:

a. Certify this case as a class action on behalf of the Class defined above, appoint Mr. England as Class Representative, and appoint the undersigned counsel as Class Counsel;

b. Award actual damages to Plaintiffs and Class members in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(1) for the allegations contained in Counts I and/or II.

c. Award statutory damages to the Plaintiff Mr. England and Class members in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(2)(B) for the allegations contained in Count I.

d. Award statutory damages to the Plaintiffs up to $1,000.00 each in an amount to be determined at trial pursuant to 15 U.S.C. § 1692k(a)(2)(A) for the allegations contained in Count II.

e. Award Plaintiffs and the Class members their reasonable litigation expenses and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3) for the allegations contained in Counts I and/or II.

f. Award actual, and statutory damages to Plaintiff Mr. England in an amount to be determined at trial for the allegations contained in Count III pursuant to 15 U.S.C. § 1681n(a)(1) and/or 15 U.S.C. § 1681o(a)(1) as applicable;

g. Award punitive damages to Plaintiff Mr. England in an amount to be determined at trial for the allegations contained in Count III pursuant to 15 U.S.C. § 1681n(a)(2);

h. Award Plaintiff Mr. England his reasonable litigation expenses and attorneys' fees for allegations contained in Count III pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2) as applicable;

i. Award Plaintiffs and Class members pre- and post-judgment interest, to the extent allowable; and

j. Award such other and further relief as equity and justice may require.

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.


Plaintiffs William England and Maxine England
*individually and on behalf of all others similarly situated.*

*/s/ Brent S. Snyder*
Brent S. Snyder (TN 021700)
Brian D. Flick (OH 0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Tel: (513) 645-3488
Fax: (216) 373-0536
notices@dannlaw.com